Milton H. SITTON, Plaintiff-Appellant,

v.

Richard H. FULTON, Mayor, et al., Defendants-Appellees.

Court of Appeals of Tennessee, Western Section.

Feb. 15, 1978.

Certiorari Denied by Supreme Court May 15, 1978.

Petition to Rehear Denied by Supreme Court June 5, 1978.

Thos. A. Higgins, Thomas I. Carlton, Jr., John P. Branham, Michael Miller, Nashville, for plaintiff-appellant.

George E. Barrett, Charles R. Ray and William R. Willis, Nashville, for defendants-appellees.

MATHERNE, Presiding Judge.

The issue at bar is whether the mayor of The Metropolitan Government of Nashville and Davidson County, Tennessee, had the authority to summarily and unilaterally discharge the Director of the Department of Law of that government, with or without cause.

The chancellor held that the mayor had that authority and the discharged Director of the Department of Law (metropolitan attorney) appeals that decision to this Court, and he also insists that the chancellor erred in refusing to admit the testimony of various members of the charter commission which drafted the present Charter of the Metropolitan Government.

## I.

The present Metropolitan Charter, approved by a vote of the people of the City of Nashville and the County of Davidson, took effect on April 1, 1963. Section 8.603 of the Charter contains the following pertinent language:

The metropolitan attorney shall be appointed by the mayor for a term which terminates with the term of the mayor making the appointment. He shall be confirmed by a majority vote of the total membership of the council.

On December 7, 1971, the plaintiff Sitton was appointed metropolitan attorney by the then mayor and was confirmed by the council. He served in this capacity through August 31, 1975, at which time the term of office of the mayor appointing him, and therefore his term, expired. From September 1, 1975, until November 18, 1975, Sitton was employed as an attorney in the department of law, and the position of metropolitan attorney was unoccupied. The defendant Fulton became mayor on September 2, 1975, for a four year term ending August 31, 1979. On November 17, 1975, the defendant Fulton appointed the plaintiff as metropolitan attorney subject to confirmation by the council. The council unanimously confirmed the appointment on November 18, 1975. In his letter of appointment directed to the council, the mayor stated "(t)he term of this appointment coincides with that of the Mayor." Sitton served as metropolitan attorney from November 18, 1975, through November 19, 1976, when the mayor undertook to summarily and unilaterally discharge him and directed that all further remuneration to him be withheld.

Sitton insists that he is an official of the metropolitan government, appointed for a term, and the mayor has no authority to discharge him, with or without cause.

Mayor Fulton insists that Sitton is not an official of the metropolitan government but is merely the mayor's attorney and is subject to discharge by his client the same as

any other attorney. Fulton further argues, and the chancellor so held, that under the law there is no provision for the discharge of the director of law and that the intent of the Charter must be that the mayor has that authority.

## II.

■ We hold that the director of law is a public officer or official of the Metropolitan Government.

"Public officer" has been defined as an incumbent of a public office; an individual who has been appointed or elected in a manner prescribed by law, who has a designation or title given him by law, and who exercises the functions concerning the public assigned to him by law. 67 C.J.S. Officers § 2.

Also, as pointed out at 63 Am.Jur.2d, Public Officers and Employees § 10 "(a) public office embraces the idea of tenure, duration, and continuity, and the duties connected therewith are generally continuing and permanent."

The Charter at sections 8.601 through 8.608 creates the department of law, the office of director of law and "other positions and employees as may be provided by ordinance or by regulations of the director consistent with ordinance." Section 8.602 sets out the duties to be performed by the department of law. Section 8.603 provides for the appointment of the director of law, sets out his qualifications, his salary and gives him supervision and control over the department of law. The director of law is a person appointed by operation of law to perform duties on behalf of the public for a fixed period of time, at a designated salary. The office is one of duration, and the duties connected therewith are continuing and permanent.

■ The defendant argues that the plaintiff was not appointed for a specific term because if the mayor should die, resign or be ousted prior to the end of his term, the plaintiff's term as director of law would automatically cease. We do not pass on the position of the plaintiff in the event such a contingency should overtake the mayor.

We note, however, that those events which the defendant claims might happen and thereby shorten the term of the director of law would also shorten the mayor's term, and it can hardly be argued that those possibilities would render the mayor's term uncertain and indefinite. We hold that the director of law, under the charter, has a term of office coextensive with that of the mayor, and that this term is so fixed and definite as to come under the rule that the appointing authority can not discharge the director of law prior to the expiration of that term, absent some statutory or charter provision authorizing the discharge. Compare: *Brock v. Foree* (1934) 168 Tenn. 129, 76 S.W.2d 314; *Rhea County v. White* (1931), 163 Tenn. 388, 43 S.W.2d 375.

■ In determining if there are charter provisions which authorize the removal or discharge of the director of law, we note section 5.03 of the Charter:

"The mayor is authorized to administer, supervise and control all departments created by this Charter, except as otherwise specifically provided, and also all departments created by ordinance pursuant hereto. Such administration shall be by and through departmental directors under the supervision and control of the mayor."

"Except as otherwise provided in this Charter, the mayor shall appoint all directors of departments, subject to limitations of civil service provided by this Charter, if any. All departmental directors not under civil service limitations appointed by the mayor shall be confirmed by the council and may be removed by the mayor *as provided herein or in the creating ordinance*." Article 5, Section 5.03, in part, Metropolitan Charter. (Emphasis added)

Section 8.608 specifically states that the director of law is not under civil service. No provision of the charter nor any creative ordinance gives the mayor authority to remove the director of law. We hold that absent such authorization by charter or creative ordinance, the mayor has no authority to remove the director of law.

We think, however, the chancellor erred in holding that the charter contained no provision for the discharge of the director of law. We note section 15.05 of the Charter which provides, as follows:

Section 15.05. *Ouster of metropolitan officers.* The mayor, vice-mayor, members of the council, and every member of a metropolitan board or commission appointed for a special term shall be subject to ouster under the terms and provisions of Tennessee Code Annotated, section 8–2701 to 8–2926,* and within the meaning

> \* An apparent typographical error because the ouster statutes are codified at T.C.A. § 8–2701 through 8–2726.

of such law metropolitan officers are hereby declared to be county and municipal officers. (Emphasis added)

It is argued that because the director of law is not expressly named in the foregoing charter provision, he is not covered thereby. We disagree. It is apparent that the underscored provision of the charter encompasses all metropolitan officers. Those specifically designated in section 15.05 as being subject to the ouster law needed no clarification of their status.

The 1953 Amendment to Article 11, Section 9 of the Constitution of Tennessee empowered the legislature to provide for the consolidation of any or all of the governmental and corporate functions of municipalities with those same functions vested in the counties in which such municipalities are located. In obedience to this mandate the legislature enacted T.C.A. §§ 6–3701 through 6–3725 authorizing the consolidation of such city and county governments into what is termed metropolitan government. The statutes at T.C.A. § 6–3711 sets out certain provisions which the metropolitan charter shall contain. Under subdivision (n) of section 6–3711, the charter shall provide:

For the names or titles of the administrative and executive officers of the metropolitan government, their qualifications, compensation, method of selection, *tenure, removal, replacement,* and such other provisions with respect to such officers, *not inconsistent with general law,* as may be deemed necessary or appropriate for the metropolitan government. (Emphasis added)

It was therefore incumbent upon the people of Nashville and Davidson County to provide in their charter for the removal of the director of law, his being an official of the metropolitan government. The charter accomplishes this by making all officials subject to the ouster laws of the state. That is the procedure for discharge, and the mayor has no authority by charter or by ordinance to discharge the duly appointed and confirmed director of law.

Our holding as herein stated renders moot the issue of whether the chancellor erred in refusing to let the members of the charter commission testify as to their intent when drafting the charter.

The decree of the chancellor is reversed, and the attempted discharge of the director of law by the mayor is declared void, and the plaintiff Sitton is hereby restored to and vested with all rights, powers and remuneration appertaining to that office. This lawsuit is remanded to the Chancery Court sitting in Davidson County, Tennessee, for a finding of the amount of money owed to the director of law by the metropolitan government and for a judgment in his favor for that amount, plus interest at the rate of 6% per annum from the date that any portion of the amount owed fell due until the date the judgment herein directed is entered. The costs in the chancery court and in this Court are adjudged against the defendant Metropolitan Government.

NEARN and SUMMERS, JJ., concur.